# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JANET G. ROMERO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV166 |
| ) | |
| STATE OF NORTH CAROLINA, and ) | |
| STATE OF NORTH CAROLINA, ) | |
| DEPARTMENT OF HEALTH AND ) | |
| HUMAN SERVICES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

**SHARP, Magistrate Judge**

This matter comes before the Court on the motion for summary judgment filed by Defendant State of North Carolina and Defendant State of North Carolina, Department of Health and Human Services. (Docket No. 21.) This action has been referred to the undersigned for all purposes pursuant to the parties' consent. (Docket No. 13.) The parties have fully briefed the motion. For the reasons stated herein, Defendants' motion will be granted, and this action will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff claims that she was subjected to race and age discrimination when Darryl Frazier, Chief of Program Operations in the Managed Care section of the North Carolina Division of Medical Assistance ("DMA"), chose other candidates for two vacancies in that section. (Docket No. 1, "Compl."). Plaintiff was working as an accounting technician in the audit section of the Division of Medical Assistance when she applied for the positions. (Docket No. 32 ("Pl. Aff.") & Ex. A.) Plaintiff is a 52-year old Caucasion female. (Pl. Aff. at 1.) The two candidates who were chosen to fill the DMA service consultant positions, T.C. and K.R., were both 34-year-old black females. (Docket No. 23, Ex. B ("Pittman Aff.") ¶¶ 41-42.) Mr. Frazier is black and 48 years of age. (*Id*. ¶ 43.) Plaintiff brings her claims pursuant to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 1981, and the North Carolina Equal Employment Practices Act ("NCEEPA") (N.C. Gen. Stat. § 143-422.1 *et seq*.), and the North Carolina Constitution (due process and equal protection provisions). (Compl. at 1.)

Mr. Frazier requested a posting seeking applications for position number 09301 (DMA regional managed care "Carolina Access" consultant) on June 4, 2008, and requested a reposting of the position on July 14, 2008. (Docket No. 23, Ex. A ("Frazier Aff.") ¶¶ 13-15.) Plaintiff's application was not included in the hiring packet received by Mr. Frazier. (*Id*. ¶¶ 14-15.) The job posting for this position stated that "[p]reference will be given to

applicants with Medicaid/managed care/Health Check knowledge and experience."[1] (*Id.* ¶ 13.) Mr. Frazier began interviewing seven of the applicants for this position. T.C., the person ultimately hired, was interviewed by Mr. Frazier, LaRhonda Cain, and Rosemary Long. (*Id.* ¶ 37.) Mr. Frazier decided upon T.C. for the position but just before he completed the paperwork to submit to the human resources department for processing, he received a call from Ellen Pittman, the human resources manager, advising him that Plaintiff was qualified for the position. (*Id.* ¶ 38.) He decided to interview Plaintiff "as a courtesy." (*Id.*) She was interviewed on October 14, 2008, by Mr. Frazier and Ms. Cain. (*Id.* ¶ 39.) Mr. Frazier chose T.C. because of her strong interview, outstanding references, and her direct experience. (*Id.* ¶ 41.) In not selecting Plaintiff, Mr. Frazier considered her "lack of direct experience with Carolina Access and her references." (*Id.*)

Also on July 14, 2008, Mr. Frazier requested a posting for position number 06412, regional Health Check consultant. (*Id.* ¶ 16.) This position announcement also stated that "[p]reference will be given to applicants with Medicaid/managed care/Health Check

---

[1] The Health Check program is a medicaid program designed to ensure that children have uninterrupted access to preventive and sick care services. (Frazier Aff. ¶ 10.) Health Check consultants provide training to and assist in developing the Health Check coordinators who work at the county or local level. (*Id.* ¶ 7.) Carolina Access is a Medicaid managed care program whereby DMA contracts with Medicaid enrolled primary care providers to create medical homes for Medicaid recipients. (*Id.* ¶ 6.) Carolina Access consultants work with medical providers in areas such as recruitment, compliance, claims billing, and claims denials. (*Id.* ¶ 8.)

knowledge and experience." (*Id*.) K.R. was selected for the position by Mr. Frazier. (*Id*. ¶ 32.) Plaintiff was among the "qualified" candidates whose application was submitted to Mr. Frazier. (*Id*. ¶ 22; Docket No. 32, Ex. D (applicant selection log).) Mr. Frazier, Ms. Cain, and Adrienne Frederick interviewed Plaintiff on August 19, 2008. (Frazier Aff. ¶ 26.) After interviewing Plaintiff, Mr. Frazier states that he contacted her current supervisor, Mr. DeHaven, as a reference. He further states that Mr. DeHaven "expressed some caution about [Plaintiff's] dependability and her communication skills." (*Id*. ¶ 29.) Mr. Frazier chose K.R. for the position he says because of her relevant work experience, excellent technical skills, and her strong references. (*Id*. ¶ 32.) According to Mr. Frazier, K.R. could "make an immediate impact in working with the coordinators in the counties and furthering the program" while Plaintiff "would have required extensive training." (*Id*. ¶ 33.)

Mr. DeHaven, Plaintiff's then-current supervisor, states through his affidavit that he is a 64-year-old Caucasian male. (Docket No. 23, Att. 3 ("DeHaven Aff.").) He says that Plaintiff's job responsibilities include uploading Medicaid provider cost report files into a database, verifying the accuracy of parts of the report, and cross-checking the accuracy of certain entries. (*Id*. ¶ 6.) Her interactions with others is "generally limited to the audit staff." (*Id*. ¶ 8.) Mr. DeHaven rated Plaintiff's performance in 2007 and 2008 as very good but notes in his affidavit that her "job did not require extensive or complex communications with providers." (*Id*. ¶ 10.) When Mr. Frazier contacted him about a reference for Plaintiff, Mr.

DeHaven was familiar with the work of Mr. Frazier's group because that group was formerly located adjacent to his own group. (*Id*. ¶ 11.) He had observed that Mr. Frazier's group had "extensive contact with outside Medicaid providers (such as physicians and their staff), as well as extensive contact with staff in other local and state agencies." (*Id*.)

Mr. DeHaven avers that he advised Mr. Frazier that Plaintiff performed well in her role as an accounting technician. (*Id*. ¶ 12.) However, he told Mr. Frazier that he "had concerns about her dependability and her ability to communicate effectively in writing." (*Id*.) Mr. DeHaven further told Mr. Frazier that Plaintiff's choice of language "was not always professional" and that she "did not always spell check," and that Plaintiff's "grammar was frequently incorrect." (*Id*.) He told Mr. Frazier that he "did not feel that [Plaintiff's] communications skills were adequate for [Mr. Frazier's] position because it required extensive communication with outside parties, both verbally and in writing." (*Id*.) Mr. DeHaven said that he "felt that [Plaintiff] would not represent DMA well in that capacity because it was a very public position." (*Id*.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. (*Id.* at 255.) The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." (*Id.* at 718-19 (citing *Anderson*, 477 U.S. at 247-48).) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

**B.** <u>**Analysis**</u>

    **1.**    **Title VII Race Discrimination and ADEA Age Discrimination Claims**

        **A.**    **Timeliness**

Defendants initially argue that Plaintiff's ADEA and Title VII claims should be dismissed because Plaintiff failed to timely file an administrative charge with the EEOC. (Docket No. 23 at 11.) After Plaintiff responded arguing that the 300-day limit, rather than the 180-day limit, applied to her as a state employee, Defendants did not further brief the

timeliness issue. (Docket Nos. 31, 33; *see Bratcher v. Pharmaceutical Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008) (explaining that NC is deferral state with 300-day time limit in two circumstances including when a state employee files a charge over which the state Office of Administrative Hearings has subject matter jurisdiction).) Therefore, the Court considers this timeliness argument abandoned by Defendants, and, in any event, to be meritless.

### B. Merits of Claims

Plaintiff has no direct evidence of either age or race discrimination, and therefore the Court will analyze the merits of her claims pursuant to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of race or age discrimination for failure to promote Plaintiff must establish that: (1) she is a member of a protected class; (2) she applied for a position; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004); *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). Although the parties disagree on whether Plaintiff has established a prima facie case, the Court will assume for purposes of this opinion that she has done so for race and age discrimination.

Once the prima facie case is established, the burden of production shifts to Defendants to state legitimate, non-discriminatory reasons for not promoting Plaintiff. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256-57 (1981). If Defendants do so, the burden shifts back to Plaintiff to show that Defendants' stated reasons are a pretext to hide unlawful discrimination. *Carter*, 33 F.3d at 458.

Defendants contend that the evidence shows two legitimate, non-discriminatory reasons for not promoting Plaintiff. (Docket No. 23 at 15.) First, Defendants contend that the work experience of the two successful applicants was better suited for the positions available than was Plaintiff's experience. (*Id*.) Second, Defendants argue that Plaintiff's recommendation from her direct supervisor was not as good as those of the two successful applicants. (*Id*.)

With respect to Mr. DeHaven's unfavorable recommendation of Plaintiff, Plaintiff has not raised a triable issue of pretext. The undisputed evidence from Mr. Frazier and Mr. DeHaven is that this recommendation was in fact made and was not favorable. Plaintiff attempts to counter this evidence by arguing that the recommendation was inconsistent with Mr. DeHaven's previous performance evaluations of Plaintiff. (Docket No. 31 at 12.)

Plaintiff points to one performance evaluation dated June 16, 2008. (*Id*.; Ex. H.) Mr. DeHaven explains the various dates reflected in this performance evaluation in his affidavit. (DeHaven Aff.) The first seven pages are from Plaintiff's evaluation for the period July 1,

2008 through June 30, 2009.  (*Id*. ¶ 4.)  The last page is from a prior review period.  (*Id*. ¶ 9.)  The pages of the review for the year ending in 2009 are dated June 16, 2008 because he and Plaintiff reviewed the plan at the beginning of the review period and dated it at that time to show that Plaintiff was aware of what was expected of her during the review period.  (*Id*. ¶ 5.)  The comments written by hand in column four and the ratings in column five (of the first 7 pages) were made by Mr. DeHaven on June 3, 2009, near the end of the review period.  (*Id*. ¶ 7.)  Because these comments were made well after Mr. DeHaven gave his recommendation to Mr. Frazier in the Summer or Fall of 2008, there is no merit to Plaintiff's argument that these comments should have been considered by Mr. Frazier in the hiring process.  (Docket No. 31 at 12.)  The very general comments and the "very good" rating reflected on the last page of the exhibit, which applied to the time period ending June 30, 2008, do not speak directly to Plaintiff's communication skills and abilities.

Plaintiff questions how Mr. DeHaven's "glowing comments" on her communication skills could have changed so dramatically without him ever mentioning a concern to her about them.  (*Id*. at 12-13.)  As shown above, however, the supposed glowing comments are directed toward a different time period than is relevant to this case.  In addition, Mr. DeHaven states that he did not make the comments in column 6 pertaining to Plaintiff's communication skills.  (DeHaven Aff. ¶¶ 8, 12.)  Therefore, there is a question of fact on who wrote the comments in column 6 which cannot be resolved at this stage of the case.

Nevertheless, the question of whether the comments made by Mr. DeHaven to Mr. Frazier are consistent with his performance rating of Plaintiff would be materially relevant to this action only if there was some indication that race or age bias was the cause for those comments. *See Risher v. Aldridge*, 889 F.2d 592, 596-97 (5th Cir. 1989) (fact that decision-maker opted to use less favorable oral recommendations instead of more favorable (for applicant) written performance appraisals in making promotion decision not materially relevant absent evidence that he did so in discriminating manner.) The record does not reflect any racial or age bias on the part of Mr. DeHaven, a 64-year old Caucasion, and Plaintiff does not argue otherwise. While Plaintiff argues that there is an inconsistency between Mr. DeHaven's performance reviews and his less favorable recommendation to Mr. Frazier, it is clear, and undisputed by any evidence, that Mr. DeHaven was evaluating Plaintiff's communication skills in two different settings. In one setting, her current position, she did not deal with the public on an extended basis; in the other setting, the positions she applied for, communicating with the public would be a large part of the job.

The record does not reveal any unfavorable recommendations for the two successful candidates. Mr. Frazier states in his affidavit that he spoke to two of K.R.'s direct supervisors and both "spoke very highly" of her and "highly recommended her for the Health Check consultant position." (Frazier Aff. ¶ 21.) Plaintiff presents no evidence regarding

Nevertheless, the question of whether the comments made by Mr. DeHaven to Mr. Frazier are consistent with his performance rating of Plaintiff would be materially relevant to this action only if there was some indication that race or age bias was the cause for those comments. *See Risher v. Aldridge*, 889 F.2d 592, 596-97 (5th Cir. 1989) (fact that decision-maker opted to use less favorable oral recommendations instead of more favorable (for applicant) written performance appraisals in making promotion decision not materially relevant absent evidence that he did so in discriminating manner.) The record does not reflect any racial or age bias on the part of Mr. DeHaven, a 64-year old Caucasion, and Plaintiff does not argue otherwise. While Plaintiff argues that there is an inconsistency between Mr. DeHaven's performance reviews and his less favorable recommendation to Mr. Frazier, it is clear, and undisputed by any evidence, that Mr. DeHaven was evaluating Plaintiff's communication skills in two different settings. In one setting, her current position, she did not deal with the public on an extended basis; in the other setting, the positions she applied for, communicating with the public would be a large part of the job.

The record does not reveal any unfavorable recommendations for the two successful candidates. Mr. Frazier states in his affidavit that he spoke to two of K.R.'s direct supervisors and both "spoke very highly" of her and "highly recommended her for the Health Check consultant position." (Frazier Aff. ¶ 21.) Plaintiff presents no evidence regarding

Nevertheless, the question of whether the comments made by Mr. DeHaven to Mr. Frazier are consistent with his performance rating of Plaintiff would be materially relevant to this action only if there was some indication that race or age bias was the cause for those comments. *See Risher v. Aldridge*, 889 F.2d 592, 596-97 (5th Cir. 1989) (fact that decision-maker opted to use less favorable oral recommendations instead of more favorable (for applicant) written performance appraisals in making promotion decision not materially relevant absent evidence that he did so in discriminating manner.) The record does not reflect any racial or age bias on the part of Mr. DeHaven, a 64-year old Caucasion, and Plaintiff does not argue otherwise. While Plaintiff argues that there is an inconsistency between Mr. DeHaven's performance reviews and his less favorable recommendation to Mr. Frazier, it is clear, and undisputed by any evidence, that Mr. DeHaven was evaluating Plaintiff's communication skills in two different settings. In one setting, her current position, she did not deal with the public on an extended basis; in the other setting, the positions she applied for, communicating with the public would be a large part of the job.

The record does not reveal any unfavorable recommendations for the two successful candidates. Mr. Frazier states in his affidavit that he spoke to two of K.R.'s direct supervisors and both "spoke very highly" of her and "highly recommended her for the Health Check consultant position." (Frazier Aff. ¶ 21.) Plaintiff presents no evidence regarding

K.R.'s recommendation. In addition, Mr. Frazier states that T.C.'s supervisor gave her an "outstanding reference." (*Id*. ¶ 37.)

Accordingly, the record shows that the two successful candidates received more favorable recommendations from their supervisors than Plaintiff. This is a legitimate, non-discriminatory reason for choosing one applicant over another. *See Chavers v. Shinseki*, 667 F. Supp. 2d 116, 132 (D.D.C. 2009).

As noted earlier, the stated preferences for both positions were for applicants with Medicaid/managed care/Health Check knowledge and experience. In addition, the posting for the Carolina Access position (No. 09301) describes the work involved as including physician recruitment, physician education and training, and addressing the concerns of contracting managed care physicians. (Docket No. 24, Ex. 9.)

Plaintiff was employed as an accounting technician at the time she applied for the vacant positions. (Docket No. 24, Ex. 34.) Her previous, most-relevant work experience consisted of work as a reimbursement officer for the Sandhills Center for Mental Health from 1997 to 2001 and as an administrative clerk for the Moore County Department of Social Services from 1995 until 1997. (*Id*.) Although Plaintiff's application mentions that she billed and collected Medicaid revenues, there is no mention of Health Check experience. (*Id*.) In addition, Mr. Frazier states in his affidavit, and Plaintiff does not dispute, that she "had virtually no knowledge or experience with the Carolina Access and Health Check

programs initially." (Frazier Aff. ¶ 27.) Due to this, Mr. Frazier stopped Plaintiff's interview for the 06412 position and gave her the opportunity to study the pertinent manual. Afterward, Plaintiff "appeared to have some knowledge about the programs." (*Id*.)

T.C.'s application, on the other hand, shows that at the time she was interviewed she was the Carolina Access coordinator in the Rowan County Department of Social Services. (Docket No. 24, Ex. 30.) Her duties also involved collaborating with the local Health Check coordinator. (*Id*.) Mr. Frazier states in his affidavit that T.C. was the "resident expert" in her county for the Carolina Access program. (Frazier Aff. ¶ 37.)

K.R.'s application shows that she had been a Health Check coordinator for almost 5 years, first at the New Hanover County Health Department and then with Access III of Lower Cape Fear. (Docket No. 24, Ex. 16.) Mr. Frazier states that during her interview she showed that she had "a strong understanding of the Health Check and Carolina Access programs." (Frazier Aff. ¶ 20.)

For these reasons, this Court finds that Defendants have shown that Plaintiff's work experience was not as well-matched for the respective positions as the experience of those chosen to fill the positions. This constitutes a second independent legitimate, non-discriminatory reason for the decision to select others rather than Plaintiff.

Plaintiff contends that she was entitled to "promotional priority" for both of the positions in question. (Docket No. 31 at 10.) Promotional priority simply means that if an

eligible state employee and an outside applicant for a position have "substantially equal qualifications," the eligible state employee must receive the job offer over the outside applicant. (Docket No. 24, Ex. 59 (State Personnel Manual).) An eligible employee must have achieved "career status" to be eligible for such priority consideration. (*Id*.) A "career" employee is one who has been employed by the State for the immediately preceding 24 months. (*Id*., Ex. 60.)

The parties disagree on whether Plaintiff had achieved career status as to the positions in question because, although she had been employed for 24 months before the positions were finally filled, she had not been so employed at the time she applied for the positions. This Court need not decide this issue because even if Plaintiff had achieved career status and this was known by Mr. Frazier, Plaintiff has not created a genuine issue of material fact on the question whether she possessed "substantially equal qualifications" to the outside applicants. To do so she must show that the employer could not make a "reasonable determination" that the job-related qualifications held by one applicant were significantly better suited for the position than the job-related qualifications held by another applicant. (*Id*., Ex. 59.) In this case, Defendants could and did make the reasonable determination that the outside applicants possessed significantly better qualifications than Plaintiff for these positions.

Plaintiff argues that the reasons given by Defendants for not hiring her for these positions changed over time, and that this is evidence of pretext. (Docket No. 31 at 12.) The argument fails, however. The evidence shows that Plaintiff was consistently informed that the other candidates had stronger references, and there is no evidence to dispute this fact.

Because Defendants have shown at least two legitimate, non-discriminatory reasons for not promoting Plaintiff, and Plaintiff has failed to raise a triable issue of pretext, summary judgment will be granted in Defendants' favor on Plaintiff's Title VII and ADEA claims. *See Carter*, 33 F.3d at 458.

### 2. Section 1981 and State Law Claims

Defendants argue that Plaintiff's claims made pursuant to 42 U.S.C. § 1981 and her state law claims should be dismissed. (Docket No. 23.) In response, Plaintiff fails to address these arguments. (Docket No. 31.) Rather, Plaintiff argues only that this Court should deny Defendants' summary judgment motion with respect to her Title VII race discrimination claim and her age discrimination claim under the ADEA. (*Id*. at 13.) Therefore, Plaintiff has abandoned these claims. To the extent they are not abandoned, the claims have no merit for the reasons argued by Defendants. Summary judgment will be granted to Defendants as to Plaintiff's claims made pursuant to section 1981, the North Carolina Equal Employment Practices Act, and the North Carolina Constitution.

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 21) is **GRANTED**, and this action is dismissed with prejudice. A judgment will be entered contemporaneously with this opinion.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: January 17, 2012